P. Turney, Adm'r. *v.* W. L. Dibrell.

P. TURNEY, Administrator, *v.* W. L. DIBRELL.

APPOINTMENT BY GOVERNOR.    *Chancellor.    Office of Clerk and Master.* Where a party has received a commission from the Governor as a Chancellor, and is in the quiet performance of the functions of the office, notwitbstanding the validity of his rights to the office might have been successfully contested in a proceeding instituted for that purpose, he is a Chancellor *de facto*, and his official acts, such as the appointments of a Clerk and Master, are valid and binding upon third parties.

Cases cited: Gold *v.* Fite, 2 Baxter, 237.   Blackburn *v.* The State, 3 Head. 690.   Moore *v.* The State, 5 Sneed, 514.

Code cited: §§805, 811.

FROM DEKALB.

Appeal from the Circuit Court.    S. M. Fite, Judge.

S. M. COLMS and E. A. DEFREES for Turney.

A. C. SNODGRASS, SAVAGE & FARRISS for Dibrell.

DEADERICK, J., delivered the opinion of the Court.

This is a writ of error, bringing up proceedings

before Hon. S. M. Fite, Judge of the Circuit Court of the Fifth Circuit, instituted by Dibrell to recover the books and records of the Chancery Court, at Sparta, under §§805 to 811 of the Code.

The questions involved are the validity of the appointment of Dibrell as Clerk and Master of the Chancery Court at Sparta, and the regularity of the proceedings against Turney to compel him to surrender the records of that Court. At the election in August, 1870, Turney was the Clerk and Master of that Court, and W. W. Ward was elected Chancellor. His election was contested before any commission was issued to him. Pending the contest, Governor Senter, assuming that a vacancy existed, by reason of the contest between R. A. Cox and said Ward, commissioned W. W. Goodpasture as Chancellor for the Fifth Chancery District, on the 21st day of October, 1870. Goodpasture assumed the duties and functions of the office, and appointed Dibrell, Clerk and Master. Turney claiming that his term had not expired, and that Goodpasture was not legally appointed Chancellor, he had, therefore, no power to displace him and appoint a successor, refused to surrender the office. Thereupon, Dibrell, under the sections of the Code before cited, applied to Judge Fite to compel Turney to deliver the books, papers and property of the office to him, as his successor.

If Goodpasture was Chancellor *de jure* or *de facto,* he might rightfully do whatever such officer had authority by law to do, including the appointment of a

Clerk and Master. It is insisted that no vacancy existed, the contested election not leaving a vacancy in contemplation of law, which authorized the Governor to exercise his power of appointment. It is conceded as declared by this Court at its last Term at this place, in the case of *Gold* v. *Fite,* that the contest made by Cox with Ward, did not create a vacancy in the office of Chancellor, and that the pendency of such contest did not authorize the exercise of the appointing power by the Governor.

In the same opinion it was announced that Judge Goodpasture, under said appointment, was Chancellor *de facto,* and any decrees pronounced by him were valid. This opinion of the validity of the acts of Judge Goodpasture, under his first appointment by the Governor, was not necessary to maintain the opinion arrived at by the Court in the case of *Gold* v. *Fite,* as it was held in that case, that the acts of the Chancellor were fully authorized by his subsequent appointment, to the legality or regularity of which there was no objection. And although the opinion expressed that the acts of Goodpasture, were valid and binding as to third persons, and that he was a Chancellor *de facto,* may be regarded as *obiter dictum,* in that case, yet we are of opinion that Judge Goodpasture holding his commission from the Governor, and under his appointment, was Chancellor *de facto,* and his acts as such are valid. The commission assumes and declares a vacancy existed, and in such case the Governor had the power to appoint and commission the Chancellor,

that is, if there had been a vacancy. But it also appears from the facts recited in the commission, that there was not such a vacancy in the office as authorized the appointment. The contest for the office did not create a vacancy, but no one save the appointee of the Governor, was commisioned or assumed to exercise its functions.

The Governor has, by law, power to appoint Chancellors in certain contingencies, and if he appoints, upon the assumption of the existence of circumstances which authorize the act, his appointee will take the office under color of title, his acts will be valid as an officer *de facto*, or one who is exercising the functions of his office under the forms of law and color of title.

The Governor commissions judicial officers, and in the case of *Blackburn* v. *The State*, 3 Head, Judge Caruthers uses this strong language. "The competency of a functionary acting under the commission of the Governor, cannot be enquired into by parties affected by his official acts." Again he says, speaking of the validity of the acts performed by one exercising the functions of an office and irregularities in his office, "all those questions are settled and closed by the Governor's commission," 5 Sneed, 514. On the other hand, if one assume to discharge the duties of an office, which has no existence by law, or to exercise the functions of an office not legally created, and purports to derive his authority in the latter case from a power which, under no circumstances, can legally confer it, he is an usurper, performing official duties under no forms

of law, or color of title, and his acts are of no validity. For the case under consideration, the Governor appointed and commissioned the officer. The law confers upon him the power do so in certain circumstances, whereby his appointee may become an officer *de jure.* If he commissioned under circumstances not authorized by law, he may, nevertheless, be an officer *de facto,* but not *de jure,* because of the irregularity or want of authority under the particular circumstances.

For the purposes of this case, it is sufficient to say, that Judge Goodpasture having received a commission from the Governor, and being in the quiet and undisturbed performance of the functions of the office of Chancellor, we hold, notwithstanding, the validity of his right to the office might have been successfully contested in a proceeding instituted for that purpose, that he was a Chancellor *de facto,* and his official acts are valid and binding upon third parties. The result is, that the writ of error must be dismissed at the cost of the petitioner.