STATE of Tennessee ex rel. Michael
D. NEWSOM, Appellant,

v.

William BIGGERS, Warden of the
Madison County Workhouse,
Appellee.

Supreme Court of Tennessee,
at Jackson.

Nov. 20, 1995.

Hughie Ragan, Jackson, for Appellant.

Mary Dee Perkins, Jackson, for Amicus Curiae.

Charles W. Burson, Attorney General & Reporter, Darian B. Taylor, Assistant Attorney General, Nashville, James G. Woodall, District Attorney General, Alfred L. Earls, Assistant District Attorney, Jackson, for Appellee.

BIRCH, Justice.

Michael D. Newsom, the appellant, was charged with shoplifting[1] upon a warrant issued by the Clerk of the Jackson City Court. Newsom pleaded guilty on December 11, 1992; and the Honorable Walter Drake, the city judge, accepted the plea. He imposed a workhouse sentence of eleven months twenty-nine days and assessed a $100 fine.

Newsom challenges the validity of his sentence on the ground that it was imposed by a judge who was not authorized by law to do so.

Article VI, Section 4, of the Constitution of the State of Tennessee requires that all judges be elected for an eight-year term. In *Town of South Carthage v. Barrett*,[2] we held that an appointed municipal court judge did not meet the constitutional requirements to hear and decide state cases. The narrow issue we now address is the validity of a judgment rendered by the judge of a municipal court of Jackson who, indeed, was elected, but to a term less than eight years as is constitutionally required.[3]

For the reasons appearing below, we affirm the judgment of the Court of Criminal Appeals, 1994 WL 201829, holding the judge to be a *de facto* judicial officer; his judicial acts are valid and are not subject to collateral attack.

In January 1993, Newsom petitioned the Madison County Circuit Court for a writ of *habeas corpus*. As grounds, he alleged that Judge Drake had not been elected to an eight-year term pursuant to Article VI, Section 4, of the Tennessee Constitution. Thus, he asserted that his detention was unlawful. The trial court properly treated the petition as one filed under the Post–Conviction Procedure Act and held an evidentiary hearing.

In order to make our discussion of the facts more meaningful, it is helpful to examine the constitutionally relevant provisions.

Article VI, Section 1, of the Tennessee Constitution provides:

**Judicial power.**—The judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace. The Legislature may also vest such jurisdiction in Corporation Courts as may be deemed necessary. Courts to be holden by Justices of the Peace may also be established.

Article VI, Section 4, addresses the specific requirements for election and terms of office:

**Judges of inferior courts.**—The Judges of the Circuit and Chancery Courts, and of other inferior Courts, shall be elected by the qualified voters of the district or circuit to which they are to be assigned. Every Judge of such Courts shall be thirty years of age, and shall before his election, have been a resident of the State for five years and of the circuit or district one year. His term of service shall be eight years.

The facts developed at the hearing indicate that in 1947, Jackson became an incorporated municipality under a mayor-aldermanic charter. 1947 Tenn.Priv.Acts 594. The charter established a city court and vested it with jurisdiction over all city ordinance violations as well as with jurisdiction, concurrent with

---

**1.** Tenn.Code Ann. § 39–14–146 (1991).

**2.** 840 S.W.2d 895 (Tenn.1992).

**3.** Newsom also questioned the authority of the appointed city clerk to have issued the warrant

in the first place because he had not been elected as required in article VI, § 13, of the Tennessee Constitution. We affirm the Court of Criminal Appeals' holding that this issue has been waived.

the general sessions court, over state offenses.

The initial question is whether the city court of Jackson is an "inferior court" that falls within the mandates of the constitutional provisions discussed. The succinct analysis by Judge Summers in the Court of Criminal Appeals decision provides guidance:

> Municipal or corporation courts are created by the legislature. If the legislature confers state law jurisdiction to such a court, then constitutional judicial power is vested in the court under Article VI. This is because the city or municipal court now exercises concurrent jurisdiction with an inferior court.

Slip op. at 9.

■ Thus, while the city court is not an "inferior court" because its jurisdiction consists solely of the enforcement of municipal ordinance violations, it must be in compliance with the provisions of the Tennessee Constitution relating to inferior courts and judges when it exercises concurrent jurisdiction over state offenses. *See Town of South Carthage v. Barrett,* 840 S.W.2d 895, 899 (Tenn.1992); *Summers v. Thompson,* 764 S.W.2d 182 (Tenn.1988). Therefore, the judge of the city court must be elected for an eight-year term in accordance with Article VI, Section 4, of the Tennessee Constitution when exercising jurisdiction over state offenses.

■ The appellant relies on the case of *Town of South Carthage* for the proposition that actions of a city court judge holding office in derogation of constitutional requirements are void and any convictions obtained in that court a nullity. We find *Town of South Carthage* to be inapposite. The defendant in *Town of South Carthage* was convicted in a municipal court of driving while under the influence. He challenged his conviction on the basis that the court did not have jurisdiction to try any case involving a violation of state law.

Pursuant to Tenn.Code Ann. §§ 6–1–101 to –406 (1985 & Supp.1991), the town of South Carthage became an incorporated municipality under a mayor-aldermanic charter. Thereafter, the town passed an ordinance creating the office of municipal judge and setting out the qualifications for the office. The ordinance provided that the judge would be appointed by and serve at the pleasure of the Board of Mayor and Aldermen; the judge's salary would be fixed by the same board. The ordinance vested the municipal judge with the judicial powers and functions of the mayor or city recorder and provided that the judge would be subject to and have the authority as designated by the provisions of applicable laws and the town's charter governing municipal court. Thus, the municipal judge had concurrent jurisdiction with the general sessions court over violations of state criminal laws, since under the statutory powers of a municipality incorporated under a mayor-aldermanic charter "the recorder or other properly designated officer shall be vested with concurrent jurisdiction with judges of the court of general sessions, in all cases of violation of the criminal laws of the state...." Tenn.Code Ann. § 6–2–403 (1985 & Supp.1991) (repealed by 1991 Tenn.Pub. Acts ch. 154 sec. 1).

This Court found that Tenn.Code Ann. § 6–2–403 was unconstitutional by reason of the separation of powers and independent judiciary provisions of the Tennessee Constitution.

> [City] judges charged with interpreting the criminal laws of this state should be elected in accordance with Article VI, § 4, of the Tennessee Constitution, in order to assure an independent judiciary free of the political caprice and whims of other government branches.
>
> .     .     .     .     .
>
> [B]ecause Tenn.Code Ann. § 6–2–403 gives the city judge of a municipality incorporated under a mayor-aldermanic charter inferior court jurisdiction without requiring the judge to be elected in compliance with Article VI, § 4, we hold the statute violates Article II, § 1, and Article II, § 2, of the Tennessee Constitution.

*Town of South Carthage,* 840 S.W.2d at 899. As noted by Justice Drowota in his concurring opinion in *Summers v. Thompson,* the need for an independent judiciary is "one of the most fundamental principles of American constitutional government...." 764 S.W.2d at 188.

The acute concern for an independent judiciary is not raised by the facts in this case. Judge Drake was elected by the people of the city of Jackson and serves at their pleasure. The only irregularity apparent in the record is in the length of the term to which he was elected. The question is whether his election for a term shorter than that mandated by the Tennessee Constitution invalidates his actions performed while in office, particularly, as they relate to this appellant's conviction.

A judge *de jure* is "one who is exercising the office of a judge as a matter of right": that is, one legally appointed and qualified to exercise the office. 48A C.J.S. *Judges* § 2 (1981). A judge *de facto* is "one acting with color of right and who is regarded as, and has the reputation of, exercising the judicial function he assumes." *Id.* "An unconstitutional statute is sufficient to give color of right or authority to elect or appoint a judicial officer, and a person elected or appointed by authority of such a statute is a *de facto* judge." *Id.* "A judge who actively assumes the duties of his office after he has been appointed by the governor of the state, or has been elected by the people, is at least a *de facto* judge even though facts aliunde might disclose irregularities in the appointment or the election." *Id.* "[A] judge *de facto* is a judge *de jure* as to all parties except the state, and ... his official acts ... are binding on third persons and the public." *Id.* at § 11.

These principles have long been recognized in Tennessee jurisprudence. In *Waters v. State ex rel. Schmutzer,* a legislative act provided that the county executive serve a four-year term and also perform the duties of county (i.e. juvenile court) judge. 583 S.W.2d 756 (Tenn.1979). The minimum age for county judge was twenty-five years. These provisions in the legislation conflicted with the constitutional provisions of Article VI, Section 4, requiring that judges of inferior courts must be elected to a term of eight years and setting the minimum age for judges of inferior courts at thirty years. *Id.* at 758. This Court held that the legislature's attempt to vest the judicial authority of the juvenile court in the county executive was invalid. However, while the person elected to that position was not a *de jure* judge, he

was a *de facto* judge, and his acts while serving were valid. *Id.* at 761.

The judicial acts of one in possession of a judicial office created and in existence by law, under color of right, assuming and exercising the functions of such office with a good faith belief in his right to exercise such authority, invoked and acquiesced in by the parties, the bar, court officials and the public, are those of a *de facto* officer. *Martin v. Dowling,* 315 S.W.2d 397, 399 (Tenn.1958); *see also Giles v. State ex rel. Giles,* 191 Tenn. 538, 235 S.W.2d 24 (1950); *Beaver v. Hall,* 142 Tenn. 416, 217 S.W. 649 (1920).

A person inducted into an office according to the forms of law is an officer *de facto,* although incompetent by the provisions of the constitution to hold the office, and his competency cannot be enquired into by the parties affected by his acts.... [H]is official acts [are] valid and binding, until he is removed in the manner prescribed by law. *City of Nashville v. Thompson,* 80 Tenn. 344, 347–350 (1883); *see also Turney v. Dibrell,* 62 Tenn. 235 (1873); *Blackburn v. State,* 40 Tenn. (3 Head) 690 (1859); *Venable & Co. v. Curd,* 39 Tenn. (2 Head) 582 (1859). The rationale underlying these cases is that it would subvert the ends of justice to invalidate the acts of a judge who presided over cases with the consent of the parties. In this case, we recognize that even where there are constitutional infirmities in the manner in which a judge took office, that judge may still be deemed to be acting under color of authority as a *de facto* judge until the infirmity can be remedied. We hold that Judge Drake had, at a minimum, *de facto* authority to render the judgment in the appellant's case.

Finally, we specifically note that the present case is distinguishable from *Town of South Carthage* on the ground that this case involves a collateral or indirect attack on the judgment rather than a direct challenge to the municipal court judge's exercise of jurisdiction, as was the case in *Town of South Carthage.* Asserting lack of jurisdiction, the defendant in *Town of South Carthage* appealed his conviction directly to the circuit court. 840 S.W.2d at 896. In the case under review, however, Newsom challenged the municipal

court judgment collaterally through a petition for *habeas corpus* relief asserting that his detention was unlawful. Because Newsom did not challenge the municipal court's exercise of jurisdiction either during the trial phase in which he pleaded guilty or on direct appeal, he acquiesced to the court's exercise of jurisdiction. *Bankston v. State,* 908 S.W.2d 194 (Tenn.1995); *Beaver v. Hall,* 142 Tenn. 416, 217 S.W. 649, 654 (1920). Therefore, having concluded that the municipal judge had *de facto* authority, Newsom cannot attack the integrity of the judgment in a collateral proceeding.

Thus, the judgment imposed by Judge Drake is binding upon the appellant. Accordingly, we affirm the judgment of the Court of Criminal Appeals.[4]

ANDERSON, C.J., and DROWOTA, REID, WHITE, JJ., concur.

4. We do not here address how long Judge Drake may serve or when he must again stand election.