# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
August 16, 2016 Session

## STATE EX REL. MELODY KAY ROGERS V. DONNIE O'KEITH LEWIS

### Appeal from the Juvenile Court for Shelby County
No. K2627    Dan H. Michael, Judge

---

### No. W2015-01882-COA-R3-JV – Filed October 21, 2016

---

This appeal involves a mother's petition to set child support. The father objected to the petition, citing a prior order in which the parties agreed that no child support would be ordered but that he would remit payment for medical insurance or medical expenses as needed. The trial court granted the petition, set a current support obligation, and awarded retroactive child support and attorney fees, finding that the prior order was void as against public policy. The father appeals. We reverse the award of retroactive child support, vacate the attorney's fees awarded and remand to the trial court for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Reversed in Part, Affirmed in Part; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which ARNOLD B. GOLDIN and BRANDON O. GIBSON, JJ., joined.

Chasity Sharp Grice, Memphis, Tennessee, for the appellant, Donnie O'Keith Lewis.

Lucie K. Brackin and Carrie E. Kerley, Memphis, Tennessee, for the appellee, Melody Kay Rogers.

Herbert H. Slatery, III, Attorney General and Reporter, and M. Cameron Hines, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, General Civil Division.

**OPINION**

## I.     BACKGROUND

Melody Rogers ("Mother") and Donnie Lewis ("Father") are the unmarried parents of the Child, born in July 1997. [1]  In February 1999, Mother filed a petition to establish parentage and to set child support.  Mother and Father (collectively "the Parties") entered into an agreement in which Father was required to remit payment for the Child's medical expenses incident to her birth and to provide medical insurance *or* to remit payment for future medical expenses.  The agreement did not require the payment of monthly child support.  In deference to the agreement, the court entered an order, dated March 5, 1999, that provided, in pertinent part, as follows:

1.      That [the Child] shall be a legitimate [child] of [Father] for purposes of inheritance, support, and other lawful purposes and that custody of [the Child] be awarded to [Mother].

2.      That [Father] pay all medical expenses incident to the birth of [the Child] and that no support be ordered by agreement of the [P]arties.

3.      That [Father] shall provide medical insurance for [the Child], or in the alternative, that he be responsible for [the Child's] medical expenses.

Despite the agreement and the March 1999 order, Father remitted monthly payments to Mother, totaling $61,555, for approximately 13 years.

On July 31, 2012, Mother filed a new petition for child support, in which she requested an order establishing the support and maintenance of the Child, awarding child support retroactive to the date of the Child's birth, and requiring Father to provide health insurance for the Child.  Father sought dismissal of the petition, citing the original agreement and the 1999 order.

The Juvenile Court Magistrate ("the Magistrate") initially heard the matter and entered findings and recommendations on March 4, 2013, and again on July 8, 2013, requiring Father to remit payment for child support and the Parties to provide medical insurance and to share the cost of medical expenses not covered by insurance.  The Magistrate did not address the issue of retroactive child support at that time.  These findings and recommendations were confirmed by the Juvenile Court Judge.  A final

---

[1] The Child has since attained the age of majority.

hearing was later held before the Magistrate, who entered the following findings and recommendations pertinent to this appeal:

1.    On March 5, 1999, this Court entered an order in this cause stating that, "[Father] pay all medical expenses incident to the birth of [the Child] and that no support be ordered by agreement of the [P]arties" and "that [Father] shall provide medical insurance for the [Child], or in the alternative, that he be responsible for the [Child's] medical expenses";

2.    Said order entered on March 5, 1999 is a valid and enforceable order of this Court;

3.    [Father's] Motion to Dismiss be granted in part and denied in part;

4.    No child support arrearage shall be ordered as such would be a retroactive modification of child support pursuant to Tennessee Code Annotated [section] 36-5-101(f)(1);

5.    [Father] shall be ordered to pay [Mother's] attorney fees for reasonable costs and fees associated with prosecuting this action[.]

Mother filed a request for a hearing before the Juvenile Court Judge. Her request was granted by Special Judge Nancy Kessler ("the Special Judge"). Following a hearing, the Special Judge found that the 1999 order was void and ordered Father to remit payment to Mother for retroactive child support in the amount of $105,359 and attorney fees in the amount of $16,982.56. The order at issue, *signed by the Special Judge*, provided, in pertinent part, as follows:

The Judge finds it necessary to be absent from holding Court, and pursuant to [Tennessee Code Annotated section] 17-2-122(b) appoints as substitute judge, Nancy Percer Kessler who is a licensed attorney in good standing with the Tennessee Supreme Court and a Magistrate appointed by him to serve as special judge in matters related to duties as a judicial officer.

This appeal followed.

During the pendency of the appeal, this court issued an order questioning whether the Special Judge possessed the requisite authority to adjudicate the matter because the record did not contain a separate appointment order signed by the Juvenile Court Judge. We directed additional briefing addressing "whether the [S]pecial [J]udge was validly

appointed to hear this matter and if not, then addressing the effect on the validity and finality of the judgment appealed."

Thereafter, the Juvenile Court Judge entered five orders, nunc pro tunc to each of the dates the Special Judge presided over the matter – November 14, 2014; December 19, 2014; February 27, 2015; April 17, 2015; and July 22, 2015. The orders provide,

> The Honorable Dan H. Michael, Judge of the Juvenile Court of Memphis and Shelby County, Tennessee finds it necessary to be absent from holding Court, and pursuant to [Tennessee Code Annotated section] 17-2-122(b) appoints as substitute Judge, Nancy Percer Kessler, who is a licensed attorney in good standing with the Tennessee Supreme Court and a Magistrate appointed by him to serve as Special Judge in matters related to duties as a judicial officer.

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

A. Whether the trial court possessed the requisite subject matter jurisdiction to adjudicate the matter.

B. Whether the trial court's award of child support was an impermissible retroactive modification of child support.

C. Whether the trial court erred in crediting Father with 35 days of co-parenting time in calculating his support obligation.

D. Whether the trial court abused its discretion in awarding attorney fees to Mother.

E. Whether either party is entitled to attorney fees on appeal.

## III. DISCUSSION

### A.

As a threshold issue, we must first address the question of the court's subject matter jurisdiction. *See* Tenn. R. App. P. 13(b) (providing this court with the authority to consider the trial court's subject matter jurisdiction whether or not the issue is raised on appeal). "The concept of subject matter jurisdiction involves a court's power to

- 4 -

adjudicate a particular type of controversy." *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) (citing *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Turpin v. Conner Bros. Excavating Co.*, 761 S.W.2d 296, 297 (Tenn. 1988)). "Judgments or orders entered by courts without subject matter jurisdiction are void." *Id.* (citations omitted). Moreover, a trial court's lack of subject matter jurisdiction requires an appellate court to vacate the judgment and dismiss the action without reaching the merits of the appeal. *Id.*

Father argues that we must vacate the judgment because the Special Judge presided over the matter without a valid appointment order signed by the Juvenile Court Judge. Tennessee Code Annotated section 17-2-122 provides as follows:

> (a) Notwithstanding § 16-15-209 or § 17-2-109 or any other relevant provision to the contrary, a judge shall have the authority to appoint a special judge as provided in this section.
>
> (b) Sections 16-15-209 and 17-2-109 and any other relevant provision shall not apply *where a judge finds it necessary to be absent from holding court and appoints as a substitute judge an officer of the judicial system under the judge's supervision* whose duty it is to perform judicial functions, such as a juvenile magistrate, a child support magistrate or clerk and master, who is a licensed attorney in good standing with the Tennessee supreme court. The judicial officer shall only serve as special judge in matters related to their duties as judicial officer.

(Emphasis added). Likewise, a substitute judge may be appointed pursuant to section 17-2-118 for good cause or when a judge finds it necessary to be absent from holding court. Tenn. Code Ann. § 17-2-118(a), (f). Neither provision requires a written appointment order from the Juvenile Court Judge.

However, our Supreme Court has held "that a trial judge should appoint a clerk and master to act as a special/substitute judge in his or her absence *only if* the trial judge determines it is not possible either to interchange pursuant to [section] 17-2-202 or to obtain assistance from another presiding judge or from this Court pursuant to section 16-2-509(e)." *Ferrell v. Cigna Property & Cas. Ins. Co.*, 33 S.W.3d 731, 738 (Tenn. 2000) (emphasis added). The Court further provided:

> If a trial judge is unable to interchange or obtain assistance from another presiding judge or this Court and therefore appoints the clerk and master or another judicial officer, *the order of appointment* should be either for a definite period of time or for a specific case. A standing order appointing a

- 5 -

clerk and master as special/substitute judge to hear an entire class of cases is not appropriate.

*Id.* at 739 (emphasis added). The Supreme Court later confirmed that its pronouncement in *Ferrell* imposed a burden upon special judges to "confirm that their authority to preside is contained in the record." *In re Valentine*, 79 S.W.3d 539, 545 n. 5 (Tenn. 2002).[2]

Here, a valid appointment order signed by someone other than the Special Judge was not contained in the record prior to this appeal. Mother agrees that the proper procedure was not followed but responds that the court's lack of subject matter jurisdiction was cured by the Juvenile Court Judge's entry of the nunc pro tunc orders. We disagree. This court addressed the use of nunc pro tunc orders as follows:

A *nunc pro tunc* entry is an entry made now, of something which was actually previously done, to have effect as of the former date. Its office is not to supply omitted action by the court, but to supply an omission in the record of action really had where entry thereof was omitted through inadvertence or mistake.

*Cook v. Alley*, 419 S.W.3d 256, 261 (Tenn. Ct. App. 2013) (internal citation and quotation omitted). Accepting the nunc pro tunc orders under the circumstances presented in this case would allow the trial court to supply an omitted action.

Lastly, Mother and the State respond that we need not vacate the judgment and dismiss the action when the Special Judge acted under color of right as a de facto judge. In *Ferrell*, the Court held that the failure to follow the proper procedure did not require reversal when the clerk and master acted under color of right pursuant to its prior decision in *State ex rel Newson v. Biggers*, 911 S.W.2d 715, 718 (Tenn. 1995). In *Biggers*, the Court explained,

A judge *de jure* is one who is exercising the office of a judge as a matter of right: that is, one legally appointed and qualified to exercise the office. A judge *de facto* is one acting with color of right and who is regarded as, and has the reputation of, exercising the judicial function he assumes. An unconstitutional statute is sufficient to give color of right or authority to elect or appoint a judicial officer, and a person elected or appointed by authority of such a statute is a *de facto* judge. A judge who actively assumes the duties of his office after he has been appointed by the governor

---

[2] The Special Judge, Nancy Percer Kessler, represented the appellant in *In re Valentine*.

of the state, or has been elected by the people, is at least a *de facto* judge even though facts aliunde might disclose irregularities in the appointment or the election. A judge *de facto* is a judge *de jure* as to all parties except the state, and his official acts are binding on third persons and the public.

\* \* \* \*

The judicial acts of one in possession of a judicial office created and in existence by law, under color of right, assuming and exercising the functions of such office with a good faith belief in his right to exercise such authority, involved and acquiesced in by the parties, the bar, court officials and the public, are those of a *de facto* officer.

911 S.W.2d at 718 (internal citations and quotations omitted). Here, we conclude that the Special Judge acted with a good faith belief in her right to exercise authority. Each order contained an explanation of her authority to preside, and neither party objected to her authority prior to this appeal. Accordingly, we must consider the merits of the appeal.

B.

Father argues that the court's recent order is a retroactive modification of the 1999 order. He asserts that the 1999 order is valid because it did not relieve him of his support obligation when he was tasked with remitting medical expenses incident to the Child's birth and health insurance or medical expenses throughout her minority. Both Mother and the State respond that the court's award of retroactive child support is not an impermissible modification of the 1999 order. They claim that the 1999 order is void as against public policy because it purported to relieve him of his child support obligation. They note that the duty to maintain medical insurance is separate from the duty to provide child support. They further claim that the 1999 order does not contain specific findings supporting the court's deviation as required by the child support guidelines.

A child support order is a judgment, enforceable in the same manner as any other judgment issued by a court of law. *See* Tenn. Code Ann. § 36-5-101(f)(1); *Nash v. Mulle*, 846 S.W.2d 803, 804 (Tenn. 1993). As relevant to this issue, the Tennessee Code provides, in pertinent part, as follows:

Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. Except as provided in subdivision (f)(6), such judgment shall not be subject to modification as to

any time period or any amounts due prior to the date that an action for modification is filed[.]

Tenn. Code Ann. § 36-5-101(f)(1). However, "agreements, incorporated in court decrees or otherwise, which relieve a natural or adoptive parent of his or her obligation to provide child support are void as against public policy[.]" *Witt v. Witt*, 929 S.W.2d 360, 363 (Tenn. Ct. App. 1996).

Nevertheless, parents may enter into an agreement to set child support pursuant to Tennessee Code Annotated section 36-5-101(j), which provides as follows:

Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties as to child support. In any such agreement, the parties must affirmatively acknowledge that no action by the parties shall be effective to reduce child support after the due date of each payment, and that they understand that court approval must be obtained before child support may be reduced, unless such payments are automatically reduced or terminated under the terms of the agreement.

"This subsection contemplates that the agreement: 1) will be in writing; 2) will be approved by a court; 3) will be incorporated into a court order; and 4) will contain the parties' acknowledgment that they may not alter the agreement without court approval." *Berryhill v. Rhodes*, 21 S.W.3d 188, 191 (Tenn. 2000) (footnote omitted).

While the 1999 order is deficient in some respects, it did not entirely relieve Father of his obligation to remit support when he retained the responsibility to maintain the cost of medical insurance or to remit payment for future medical expenses. *See Pennington v. Hennessee*, No. M2010-01873-COA-R3-CV, 2011 WL 2267478, at *2-3 (Tenn. Ct. App. June 8, 2011) (upholding a private agreement incorporated into a court order in which the father was required to remit payment for certain expenses in lieu of child support); *Woodard v. Woodard*, No. M2004-01981-COA-R3-CV, 2006 WL 1343209, at *4 (Tenn. Ct. App. May 16, 2006) (upholding a parenting plan in which the father was required to provide medical insurance and to reimburse the mother for half of the medical and dental costs in lieu of child support). There is also no evidence of an agreement not to seek support in the future should a substantial and material change in circumstances occur. To the contrary, the evidence reflects that Father remitted monthly payments to Mother until she filed a new petition to set child support. Additionally, the court's failure to issue a factual finding justifying the deviation from the child support guidelines does not render the 1999 order subject to attack when the time for direct appeal of the order passed. With these considerations in mind, we hold that the 1999

order was final and not void on its face and that the trial court's setting of retroactive child support was an impermissible modification of the 1999 order.

## C.

In light of this court's decision, any issues pertaining to the court's calculation of the amount of retroactive support owed are pretermitted.

## D. & E.

Father argues that the court abused its discretion in awarding attorney fees when he had a good faith basis to challenge the petition and when the fees were unreasonable. Mother and the State respond that the court did not abuse its discretion in awarding her attorney fees when such fees were reasonable and necessary to prosecute the action.

Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). "Under the American [R]ule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American [R]ule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citations omitted). "[A]s a general principle, the American [R]ule reflects the idea that public policy is best served by litigants bearing their own legal fees regardless of the outcome of the case." *House v. Estate of Edmondson*, 245 S.W.3d 372, 377 (Tenn. 2008).

A right to recover attorney fees in child support disputes was created in Tennessee Code Annotated 36-5-101(l), which provides,

> The court may, *in its discretion*, at any time pending the suit, upon motion and after notice and hearing, make any order that may be proper to compel a spouse to pay any sums necessary to enable the other spouse to prosecute or defend the suit and to provide for the custody and support of the minor children of the parties during the pendency of the suit, and to make other orders as it deems appropriate. In making any order under this subsection (l), the court shall consider the financial needs of each spouse and the children, and the financial ability of each spouse to meet those needs and to prosecute or defend the suit.

(Emphasis added). Under the abuse of discretion standard, this court is bound by the principle that the trial court "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *Deakins v. Deakins*, E2008-00074-COA-R3-CV, 2009 WL 3126245, at \*7 (Tenn. Ct. App. Sept. 30, 2009) (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). A trial court abuses its discretion when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (citation omitted). An appellate court cannot substitute its judgment for that of the trial court. *See Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). With that principle in mind, since the trial court did not consider the factors provided in the statute, we are vacating the award of attorney's fees and remanding this case to the trial court to consider the factors provided by this statute. Exercising our discretion in such matters, we deny the competing requests for attorney fees on appeal.

## IV. CONCLUSION

The judgment of the trial court is reversed, as to the award of retroactive child support and vacated as to the award of attorney's fees. The judgment of the trial court is affirmed in all other respects. The case is remanded for further proceedings consistent with this opinion. Costs of the appeal are taxed one-half to the appellee, Melody Kay Rogers, and one-half to the appellant, Donnie O'Keith Lewis.

_____
JOHN W. McCLARTY, JUDGE